*Anne George, et al. v. Baltimore County, Maryland, et al.*, No. 37, September Term, 2018, Opinion by Adkins, J.

**STANDING – TAXPAYER STANDING DOCTRINE – SPECIFIC INJURY**: To demonstrate special interest in a taxpayer standing suit, a taxpayer must (1) make a good faith allegation of an illegal or *ultra vires* act by a municipal corporation or official; and (2) show a "specific injury," or that the act may injuriously affect the taxpayer's property through a potential pecuniary loss or increase in taxes. *See Kendall v. Howard Cty.*, 431 Md. 590, 605 (2013). Petitioners have established a reasonable likelihood of potential pecuniary harm derivative of waste and mismanagement, a nexus between that harm and the alleged illegal government act, and sufficiently quantified the alleged harm. Consequently, we hold that Petitioners have demonstrated specific injury and have standing under the taxpayer standing doctrine.

IN THE COURT OF APPEALS

OF MARYLAND

No. 37

September Term, 2018

_____

ANNE GEORGE, et al.

v.

BALTIMORE COUNTY, MARYLAND, et al.

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty,
Adkins, Sally D.,
    (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Adkins, J.
Watts, J., concurs.

_____

Filed: April 1, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Taxpayer standing doctrine encourages the highest good governance standards by empowering stakeholder oversight of local governments. Yet, these suits have the potential to substantially burden the time and treasure of local governments, impeding their efforts to serve the citizenry. Maintaining a balance between these competing forces has sometimes resulted in varied, complicated, and seemingly contradictory legal edicts. But our task, as we again address this topic, is eased by the recent and important decision in *State Center, LLC v. Lexington Charles Ltd. Partnership*, 438 Md. 451 (2014), which did much to untangle the web of taxpayer standing in Maryland.[1]

With *State Center* as our beacon, we resolve this case in favor of Petitioners, holding that they possess the requisite taxpayer standing to pursue their claim against Baltimore County. This is despite the County's assertion that the "minor" harm alleged by the taxpayers will not cause an increase in taxes, especially considering it has not raised the property tax rate in 26 years or the income tax rate in 22 years.

## FACTUAL OVERVIEW AND PROCEDURAL POSTURE

The present case involves three Baltimore County taxpayers, Anne George, Jody Kesner, and Jody Rosoff (collectively, "Petitioners" or "Taxpayers"), and their lawsuit against Baltimore County ("County") and various County administrators. Petitioners' suit

---

[1] The phrasing of the issue in our order for *certiorari* was as follows:

> Can a government entity eliminate the right of taxpayers "to bring a lawsuit in this State to prevent waste or unlawful use of public property and funds," *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 560 (2014), by not increasing property tax rates for some period of time?

revolves around the County's operation of the Baltimore County Animal Shelter ("BCAS") and alleged waste at the facility.

In December 2014, Taxpayers filed a complaint in the Circuit Court for Baltimore County seeking preliminary and permanent injunctions, a declaratory judgment, and a writ of mandamus. Taxpayers alleged they were entitled to bring suit under the taxpayer standing doctrine because they were "injured by the increased tax burden caused by [the County's] illegal acts, in addition to other pecuniary injuries from having to care for animals that have been harmed by [the County's] acts." They also claimed that various County actions resulted in over-expenditure on medical care and staffing and under-collection of fees.

In their complaint, Taxpayers alleged that the County, in its management of BCAS, violated numerous provisions of Baltimore County Code, Article 12. Specifically, Taxpayers stated that the County failed to "[a]ppoint, train, and qualify" appropriate individuals to work in animal control, Balt. Cty. Code § 12-1-103(2); maintain a program to assist volunteers, *id.* § 12-1-103(3); provide appropriate facilities and care for animals, *id.* § 12-1-103(4); attempt to locate owners of stray animals, *id.* §§ 12-1-202(a), 12-3-203(a); hold animals for four business days in a "humane manner," *id.* §§ 12-3-201(b), 12-3-202(b); put animals up for adoption only if they meet certain standards, *id.* § 12-3-204(d); and maintain holding facilities that meet the minimum standards of Article 12, *id.* § 12-6-103.[2] Taxpayers alleged that these regulations are routinely violated.

_____

[2] Since the commencement of this action, Baltimore County Code §§ 12-3-201(b), 12-3-202(b), and 12-3-203(a) have been repealed and replaced with new language.

2

The County responded with a motion to dismiss or, in the alternative, motion for summary judgment, claiming, among other things, that Taxpayers lacked standing to bring their claim. The County argued that Taxpayers "failed to adequately allege any illegality or *ultra vires* act that reasonably may result in a pecuniary loss or a tax increase to survive [the] motion." The motion was accompanied by an affidavit from the Director of Budget and Finance for Baltimore County, Keith Dorsey ("Dorsey Affidavit"). The Dorsey Affidavit asserted that Baltimore County property taxes had not been increased in 26 years, the income tax had not been increased in 22 years, and that BCAS constituted such a small fraction of the overall budget "that no taxes would be increased as a result of operation of the Animal Shelter."

Taxpayers' response characterized the County's motions as merely alleging a failure to show that taxes will increase, not rebutting Taxpayers' charge of "other pecuniary loss." Relying mainly on their complaint, the County's motion to dismiss or for summary judgment, and the Dorsey Affidavit, the response asserted that Taxpayers suffered a pecuniary loss "from the illegal expenditure of taxpayer funds," which included the waste of tax-derived funds "on excess veterinary care and medications, food and other necessities, euthanasia, and employees." Moreover, with fewer animals suitable for adoption, Taxpayers asserted a loss of revenue from adoption and licensing fees. Taxpayers also alleged other pecuniary losses, separate from those involving the waste of tax-derived funds, caused by veterinary expenses they incurred caring for three different animals adopted from BCAS and allegedly mistreated while in the County's care.

3

Significantly, on the same day that Taxpayers filed their response, they also filed a separate motion for preliminary injunction and request for hearing. Attached to the motion were 18 separate affidavits. We summarize the motion and affidavits as follows. After adopting animals from BCAS, numerous individuals discovered that their pets were "severely underfed." There were allegations that animals had been left wet and sitting in pooled water, resulting in rashes, irritation, and bleeding. Several affiants claimed that BCAS routinely failed to provide veterinary care, "isolate contagious animals from other animals," or scan for identification microchips. These failures resulted in deteriorating health conditions, unnecessary euthanasia, and animals being held in the shelter without their owner's knowledge. BCAS also failed to sterilize animals before they were offered for adoption. Additionally, affiants claimed that employees and volunteers were improperly trained and inadequately supervised.

At the hearing, the judge denied the motion to dismiss and focused on summary judgment. On two occasions, the parties pointed the judge to the complaint and the preliminary injunction motion and attached affidavits for additional details regarding Taxpayers' alleged injury. There was significant debate, and some confusion, regarding the type of harm required to grant taxpayer standing under *State Center*, a leading taxpayer standing case authored by Judge Glenn T. Harrell, Jr. for this Court.

The debate was twofold. First, there was disagreement regarding the requirement that "the **taxpayer** must allege . . . a special interest distinct from the **general public**," *State Center*, 438 Md. at 556 (emphasis added). The dispute centered around the interpretation of the word "taxpayer" as a subset of "general public"—i.e., whether such a

4

relationship compared specific taxpayers in a political subdivision to taxpayers generally in the same subdivision, or specific taxpayers in the political subdivision to residents generally. Second, the parties disagreed about whether the Dorsey Affidavit, stating that taxes had not and would not be raised, foreclosed Taxpayers' argument that illegal County actions could reasonably be expected to result in "pecuniary loss or an increase in taxes," *id.* at 557 (emphasis removed).

In a written opinion, the hearing judge concluded that, while Taxpayers pled sufficient facts to withstand the motion to dismiss, the alleged pecuniary injury must be more developed to survive summary judgment. The judge ruled that Taxpayers did not "specifically allege 'waste of tax dollars' in their Complaint." In the court's view, Taxpayers' argument centered entirely around the question of a potential tax increase or decrease. Significantly, the court determined that Taxpayers never rebutted the Dorsey Affidavit, which "established that any alleged illegal acts have not and will not result in increased taxes or pecuniary loss to [Taxpayers]." For these reasons, summary judgment was granted.

In an unreported decision, the Court of Special Appeals affirmed the Circuit Court. *See George v. Balt. Cty.*, No. 47, Sept. Term 2016, 2018 WL 2948204 (Md. Ct. Spec. App. June 12, 2018). The intermediate appellate court held that "the County's actions were not reasonably likely to result in a pecuniary loss to [Taxpayers] because the County's actions were not likely to affect [their] taxes." *Id.* at *5. In dissent, Senior Judge Harrell, sitting by designation, stated that the majority erred when it "reduce[d] the disjunctive standard

of potential pecuniary loss or tax increase into a single category," one entirely about taxation. *Id.* at \*6.

## DISCUSSION

*Standard of Review*

In Maryland, a court shall grant summary judgment only if "there is no genuine dispute as to any material fact and . . . the party in whose favor judgment is entered is entitled to judgment as a matter of law." Maryland Rule 2-501(f). "Whether summary judgment was granted properly is a question of law." *Lightolier, a Division of Genlyte Thomas Grp. LLC v. Hoon*, 387 Md. 539, 551 (2005). Consequently, these determinations are made without deference to the deciding and reviewing courts. *See id.* "We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-pled facts against the moving party." *Barclay v. Briscoe*, 427 Md. 270, 282 (2012).

*Summary Judgment and Pleadings*

To determine whether a genuine dispute of material fact exists, we must first decide which evidence in the record can be reviewed to make such a determination. Taxpayers maintain that a material dispute exists as to whether Baltimore County wasted government funds through the various actions described above. The County, on the other hand, asserts that Taxpayers' response to the motion for summary judgment was insufficient, as their arguments are unsupported and "speculative at best." Taxpayers' response, according to the County, did not contain the admissible evidence required under Md. Rule 2-501 and, therefore, failed to sufficiently rebut the Dorsey Affidavit.

6

Under Maryland Rules, "[a]ny party may file a written motion for summary judgment of all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Md. Rule 2-501(a). This motion must be supported by affidavit if it is: "(1) filed before the day on which the adverse party's initial pleading or motion is filed or (2) based on facts not contained in the record." *Id.* The County filed such an affidavit—the Dorsey Affidavit—purporting to establish that taxes had not and would not be raised, even if the alleged violations were occurring.

If the opposing party chooses to reply, it must answer, in writing, "identify[ing] with particularity each material fact as to which it is contended that there is a genuine dispute . . . ." Md. Rule 2-501(b). Additionally, as to these alleged material facts, the opposing party must "identify and attach the relevant portion of the specific document, discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute." *Id.* "A response asserting the existence of a material fact or controverting any fact contained in the record shall be supported by an affidavit or other written statement under oath." *Id.* We have yet to interpret the word "supported," above, as meaning "attached to the responsive filing, only."

"[F]acts alleged in pleadings are not, by that means alone, before the court as facts for summary judgment purposes. Ordinarily, mere allegations neither establish facts, nor show a genuine dispute of fact." *Vanhook v. Merchants Mut. Ins. Co.*, 22 Md. App. 22, 27 (1974) (citation omitted). Still, courts should look to the "pleadings, depositions, and admissions **on file**, together with the affidavits, if any" to determine whether a dispute

7

exists. *Cox v. Sandler's, Inc.*, 209 Md. 193, 197 (1956) (emphasis added). This means that courts should review any filing that shows, "in detail and with precision, by facts admissible in evidence," *Mullan Contracting Co. v. IBM Corp.*, 220 Md. 248, 257 (1959) (citations omitted), that there is a genuine dispute. We have before deemed it appropriate to consider supplemental affidavits filed separately from the plaintiff's response and prior to a hearing on a motion for summary judgment. *See Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 20 (1974).

The Circuit Court opinion granting summary judgment states that Taxpayers "did not provide a counter-affidavit or an affidavit pursuant to Md. Rule 2-501(d)," allowing for "affidavits of defense not available." Whether or not this is strictly true, Taxpayers submitted 18 affidavits with their motion for preliminary injunction, which was filed on the same day as the response to the motion to dismiss or for summary judgment. These affidavits were referenced in the motions hearing, but never mentioned in the judge's final opinion. So long as these affidavits meet the standard set forth in the Maryland Rules,[3] they should be factored into the overall summary judgment determination.

Keeping in mind the filings that the Circuit Court had at its disposal at the point of the hearing, we must determine whether they create a genuine dispute of material fact. Specifically, we must decide whether Taxpayers' allegations satisfy the specific injury requirement, discussed in detail below. We turn to that question now.

---

[3] Maryland Rule 2-501(c) provides: "An affidavit supporting or opposing a motion for summary judgment shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

*Taxpayer Standing Doctrine*

Taxpayer standing doctrine permits a taxpayer to "invoke the aid of a court of equity to restrain the action of a public official, which is illegal or *ultra vires* and may injuriously affect the taxpayer's rights and property." *Inlet Assocs. v. Assateague House Condominium Assn.*, 313 Md. 413, 440–41 (1988) (citation omitted). Such a distillation has come to seem oversimplified, as the doctrine has grown and become "disorganized" and, "at times, seemingly contradictory . . . ." *State Center*, 438 Md. at 540–41. In *State Center*, Judge Harrell, writing for this Court, clarified some aspects of taxpayer standing that we discuss further below. In his words, "[T]he conceptual basis of the doctrine is that the action is brought by complainants, as taxpayers and on behalf of all other similarly situated taxpayers." *Id.* at 547 (emphasis omitted).

The taxpayers, in essence, are asserting the rights of their government against local administrators. Thus, we have likened the taxpayer suit to a derivative shareholder suit, the shareholders of a government being the taxpayers. *See id.* at 541. In this way, Maryland has "gone rather far in sustaining the standing of taxpayers" to sue for illegal or *ultra vires* acts, compared to other jurisdictions. *Inlet Assocs.*, 313 Md. at 441 (citation omitted).

There are two broad requirements to successfully assert taxpayer standing. The first requirement is taxpayer status. To establish eligibility to bring the suit, the plaintiff must demonstrate that: (a) "the complainant is a taxpayer," and (b) "the suit is brought, either expressly or implicitly, on behalf of all other taxpayers." *State Center*, 438 Md. at 547. In this case, the parties do not contest that Taxpayers have sufficiently pled this element.

9

The second broad requirement is that parties must assert a "special interest," alternatively referred to as the "special damage" requirement. Special interest requires a taxpayer to allege: "[(1)] an action by a municipal corporation or public official that is illegal or *ultra vires*[;] and [(2)] that the action may injuriously affect the taxpayer's property, meaning that it reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes." *Kendall v. Howard Cty.*, 431 Md. 590, 605 (2013) (citation omitted). These are known as the (1) "illegal or *ultra vires* act" prong, and (2) the "specific injury" prong. *See State Center*, 438 Md. at 555–56.

The illegal or *ultra vires* act prong "has been applied leniently and seems rather easy to meet . . . ." *Id.* at 556. Plaintiffs must simply "allege, in good faith, an *ultra vires* or illegal act by the State or one of its officers . . . ." *Id.* The County does not contest that Taxpayers have successfully met this element of taxpayer standing. Taxpayers have made good faith claims of illegality by enumerating several alleged violations of Article 12 of the Baltimore County Code.

The specific injury prong is more opaque, and often proves a "stumbling block." *Id.* at 572. Plaintiffs establish specific injury by demonstrating the appropriate type of harm, a nexus between the illegal or *ultra vires* act and the alleged harm, and some modest showing regarding the degree of harm. *See id.* at 560.

### Type of Harm

The heart of both parties' substantive arguments lies in the "type of harm" alleged. Taxpayers argue that the Court of Special Appeals erred in conflating "pecuniary loss" and "increase in taxes" by ignoring the disjunctive, "or." They characterize *State Center*, when

10

read as a whole, as supporting the idea that "a waste of already-collected funds can 'affect' taxes just as much as an ensuing rate hike." Treating an increase in taxes as a necessary element to establish taxpayer standing, Taxpayers argue, would unduly limit the doctrine.

The County retorts that Taxpayers failed to present any well-pleaded facts of taxpayer waste. They assert that Taxpayers' allegations are generalized, not based on personal observation, and fail to allege any pecuniary loss. To support this position, the County argues that only three of the animals identified in the complaint had any direct personal contact with Petitioners. Thus, according to the County, Taxpayers' harms also were not distinct from those of the general public.

To demonstrate the type of harm necessary for specific injury, plaintiffs must show, first, that they "reasonably may sustain a pecuniary loss or a tax increase," *Inlet Assocs.*, 313 Md. at 441 (citation omitted), and, then, that they have a "special interest distinct from the general public," *State Center*, 439 Md. at 556.

Taxpayers have been consistently required to establish "that the action being challenged results in a pecuniary loss or an increase in taxes." *Id.* at 556–57 (citation omitted). We agree with Judge Harrell's dissent in the Court of Special Appeals, as it reinforces the importance of the disjunctive "or" in the foregoing standard. Yet, in assessing standing, we have never asked for more than a "potential" showing of such harms, *id.* at 559, and have "exhibited great leniency in [our] interpretation of 'potential pecuniary loss,'" *id.* at 561 (citations omitted). Thus, a **reasonable possibility** of either pecuniary loss, **or** a tax increase, must be shown.

11

Moreover, "[t]his Court has recognized repeatedly that taxpayers have the right to bring a lawsuit in this State to prevent waste or unlawful use of public property and funds." *Id.* at 560 (emphasis removed). We have stated that an illegal or *ultra vires* act can cause pecuniary harm in the form of "an assessment of property or . . . the levy, collection, expenditure, appropriation, or diversion of public taxes." *Ruark v. Int'l Union of Operating Eng'rs*, 157 Md. 576, 590 (1929). Consequently, raising taxes is not the only valid type of harm that can be alleged.

We have spilled much ink delineating the line between sufficient allegations of waste resulting in potential pecuniary loss, and those that are too speculative. Early on, in *Sun Cab Co. v. Cloud*, 162 Md. 419, 427 (1932), we held that "taxpayers interested in avoiding the waste of funds derived from taxation" could bring suit to enjoin a "void referendum." This case has been described as among the more "lenient interpretations" of potential pecuniary loss. *State Center*, 438 Md. at 563. Again, in *James v. Anderson*, 281 Md. 137, 142 (1977), we decided that allegations of decreased efficiency resulting from an *ultra vires* act were enough to maintain a suit. Yet, in *Floyd v. Mayor and City Council of Baltimore*, ___ Md. ___, ___ (2019), Maj. Slip Op. at 32–33, we reined in any speculation that a potential need to fend off charges of illegality is sufficient to confer standing. Instead, we decided that to allow the threat of lawsuit, itself, to provide the necessary pecuniary loss would be circular and insufficiently concrete. *Floyd*, Maj. Slip Op. at 33. Thus, we narrowed the universe in which waste results in an adequate claim of pecuniary loss.

The County claims that Taxpayers inadequately raise the issue of taxpayer waste. We disagree. In their response to the motion to dismiss or for summary judgment, Taxpayers specifically allege that "the County wastes taxpayer derived funds through numerous specific violations of law . . . ." Examples of such waste include excess expenditures on veterinary care, food, and medications; the cost of maintaining animals that, if cared for properly, would be eligible for adoption; lost revenue due to these non-occurrent adoptions; and excessive staffing resulting from an inadequate volunteer program. Taxpayers' complaint also specifically alludes to "other pecuniary injuries," beyond increased taxes, and claims that various County actions result in over-expenditure on medical care and staffing and under-collection of fees—i.e., waste.

The County points us to the line in *State Center* providing that "the issue is not what 'type' of harm is sufficient necessarily, but rather a much more forgiving question of whether the type of harm is one that may affect the complainant's taxes." 438 Md. at 565. They argue that this demonstrates that a tax increase, or threat of one, is required for taxpayer standing. Our interpretation of *State Center* differs somewhat, as we view the term "affect" in a slightly broader context. To limit the type of harm that can "affect" taxes only to harms that actually result in tax increase is to ignore the statement—ten words earlier—that the standard elucidated is a "much more forgiving" one. It is sufficient for a given harm to affect taxes by increasing them. But, such an effect is not necessary. We are willing to recognize substantial waste in government operations, even without potential tax increase, as a pecuniary loss sufficient to confer standing. This is because taxpayers, as "shareholders," are reasonably entitled to a sound and careful use of funds.

13

This analysis sheds light on why the Circuit Court erred in placing almost total reliance on the Dorsey Affidavit, concluding that it "established that any alleged illegal acts have not and will not result in increased taxes or pecuniary loss to [Taxpayers]." The Dorsey Affidavit certainly establishes that Baltimore County has not raised the property tax rate in 26 years and has not increased the income tax rate in 22 years. The affidavit also appears to appropriately contextualize the "Animal Services Program" within the broader County budget.[4] Yet, it does not address whether the government expenditure was wasteful.

Taxpayers' 18 affidavits, on the other hand, relate to the issue of waste. Upon review, the affidavits state the following facts, at least for the purposes of a summary judgment motion. First, affiants attested that multiple animals were not sterilized, and any record of sterilization was inadequate. Multiple affiants also alleged personal knowledge of animals that BCAS never scanned for microchips, and, at least one animal is alleged to have been euthanized as a result of this failure. Many allegations related to generally inadequate veterinary care, food, and water supply. Specifically, water appeared to have been inaccessible to many animals. Many affiants stated that animals recovered or adopted from BCAS were ill. Moreover, others observed that BCAS failed to separate sick animals from healthy ones. Numerous individuals observed damp conditions and sitting water on

---

[4] We doubt, however, whether an affidavit stating that taxes will not rise in the future can establish that fact. Moreover, we also question whether any statement about future unsettled Baltimore County tax policy is within the cognition of any lay witness or admissible as evidence in court, as required under Md. Rule 2-501(c). Such a statement is highly speculative.

14

the floors of the shelter.  Finally, affiants claim that there were too few qualified staff and an inadequate volunteer program.

Consequently, Taxpayers contend, the County has wasted taxpayer funds.  They claim that the County's actions "increase the number of animals that must be housed at BCAS and therefore impose increased maintenance costs."  Such actions allegedly are wasteful in that they impose expenses on the public purse "for materials like medications for animals that avoidably fall ill and euthanizing agents for animals that are unnecessarily euthanized."  Finally, Taxpayers assert, with fewer animals suitable for adoption, the County lost revenue from adoption and licensing fees.  These allegations of waste amount to substantial inefficiency and unlawful misuse of public property and treasure, regardless of whether they are likely to cause an increase in taxes.  Taxpayers have successfully alleged that, because BCAS's ineffectual management resulted in the provision of more expensive shelter services and decreased revenue, its use of taxpayer funds was wasteful.

As discussed previously, Taxpayers must also establish a "special interest" in the wasted funds that is "distinct from the general public."[5]  *State Center*, 438 Md. at 556.  We have explained that entitlement to sue is based on the taxpayer's "equitable ownership of [public] funds and their liability to replenish the public treasury."  *Id.* at 558–59 (cleaned up).  Surely the "taxpayer" to which we referred means any individual who may be liable

---

[5] "The distinction between resident and taxpayer is significant," and has been subject to much consternation.  *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 559 n.65 (2014).  To illuminate this distinction, we provided that, "[a] party may be a resident of the State (and, thus, have a 'general interest' in the State's actions), but not be a taxpayer whose pecuniary interest would be affected by that action (and, thus, not have the requisite 'special interest')."  *Id.*

15

to replenish the relevant fisc. Conversely, the "general public" includes all those not subject to such liability. Hence, "taxpayer" means those in the relevant jurisdiction subject to the taxation which is alleged to have been increased or wasted, while the "general public" amounts to those who are not subject to such taxation.

To explain, the taxpayers presently at issue are all those liable to replenish the fisc, via taxation, from which BCAS is funded, as this is the money that is allegedly being misused or wasted.[6] Here, this includes any Baltimore County taxpayer contributing to general fund tax revenues, as BCAS operates using monies supplied from the Baltimore County general fund. The "general public," on the other hand, includes all those not subject to such liability. Thus, the taxpayers of Baltimore County, as represented by the present Petitioners, are sufficiently distinct from the general public.[7]

### Nexus

We have recognized that the plaintiff must also clearly demonstrate a nexus between "the potential pecuniary damage and the challenged act." *Floyd*, Maj. Slip Op. at 31–32. As part of this showing, "the taxpayer must be asserting a challenge and seeking a remedy

---

[6] For information regarding the taxes levied on Baltimore County residents, see *Tax Rates*, Balt. Cty. Gov't (Oct. 18, 2018), https://www.baltimorecountymd.gov/Agencies/budfin/taxpayerservices/taxrates.html [*archived at* https://perma.cc/V4H3-N6DT]. They include a real property tax, personal property tax, public service taxes, and income tax.

[7] This explains the statement by Judge Harrell (ret.), in dissent, that he was "not certain . . . that the individual actual expenditures incurred by [Taxpayers] who claimed to have spent them should receive much weight in the analysis of standing." *See George v. Balt. Cty.*, No. 47, Sept. Term 2016, 2018 WL 2948204, at *6 n.4 (Md. Ct. Spec. App. June 12, 2018). Rather, such harm is more appropriate for a private action.

16

that, if granted, would alleviate the tax burden on that individual and others[.]" *State Center*, 438 Md. at 572. The County argues that Taxpayers never established such a nexus. We do not agree.

As described at length above, Taxpayers allege a nexus between the potential pecuniary damage—waste of government resources within a program funded from a pot that Petitioners are liable to replenish—and the challenged illegal act—the alleged violations of Article 12 of the Baltimore County Code. We refer again to the above analysis to illuminate this point. As their remedies, Taxpayers seek a declaratory judgment, writ of mandamus, and preliminary and permanent injunctions enjoining the alleged illegal activity.[8] It is self-evident that if waste and mismanagement at the shelter existed, any such relief would alleviate same.

### Degree of Harm

Finally, there must be some modest showing regarding the degree of harm suffered by the taxpayers. "It is well-settled that the individual's monetary burden does not need to be calculable at the time of filing suit. Equally well-settled, however, is the requirement that there must be a 'clear showing' that a monetary burden is alleged." *State Center*, 438 Md. at 580. Uncertainty surrounding the potential loss to the taxpayer is not disqualifying,

---

[8] Taxpayers seek no monetary damages. This action is typical of taxpayer suits, and indeed, taxpayer standing presupposes that only declaratory and injunctive relief will be permitted, and not money damages or attorney's fees. *See Citizens Planning & Hous. Ass'n v. Cty. Exec. of Balt. Cty.*, 273 Md. 333, 339 (1974) ("[T]he principle has become established that a taxpayer may invoke the aid of a court of equity to restrain the action of a public official or an administrative agency . . . ."). The absence of monetary relief curtails the likelihood of frivolous taxpayer suits.

17

as this uncertainty "is the reason that we do not require taxpayers to demonstrate in the pleading the exact pecuniary loss or increase in taxes." *Id.* at 577.

To be sure, there must be some degree of certainty that the loss experienced by taxpayers is not zero. The Dorsey Affidavit confirms that the operational budget for the Animal Services Program is approximately $2,260,631 per fiscal year. Waste of funds in the manner described and failure to collect adoption and license fees certainly demonstrate some monetary burden.

## CONCLUSION

In sum, Taxpayers have established pecuniary harm derivative of waste and mismanagement, a nexus between that harm and the alleged illegal government act, and sufficiently quantified the alleged harm. For these reasons, we hold that Taxpayers have demonstrated specific injury and, thus, possess standing to pursue their claim under the taxpayer standing doctrine. Consequently, the motion for summary judgment should have been denied. We reverse the Court of Special Appeals and remand to that Court with instructions to reverse the Circuit Court and remand to it for further proceedings consistent with this opinion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT HEREWITH. COSTS TO BE PAID BY RESPONDENT.**

Circuit Court for Baltimore County
Case No. 03-C-14-014041
Argued: January 3, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 37

September Term, 2018

_____

ANNE GEORGE, et al.

v.

BALTIMORE COUNTY, MARYLAND, et al.

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: April 1, 2019

Respectfully, I concur. I agree with the Majority that, under the circumstances of this case, Anne George, Jody Kesner, and Jody Rosoff (together, "Petitioners") satisfied the requirements of taxpayer standing, and that the Circuit Court for Baltimore County improperly granted the County's motion for summary judgment. See Maj. Slip Op. at 18. More particularly, I agree with the Majority that Petitioners have satisfied the specific injury prong of the special interest requirement. See id. I write separately, however, because, from my perspective, the specific injury that Petitioners alleged, as described by the Majority, is not pecuniary loss, but rather a potential increase in taxes. In other words, in my view, consistent with case law, pecuniary loss is not the equivalent of a potential increase in taxes; instead, pecuniary loss could encompass circumstances that do not involve a potential increase in taxes, as pecuniary loss and an increase in taxes are distinct types of harm.

The majority opinion defines taxpayer standing as consisting of two broad requirements—"taxpayer status" and "special interest[.]" Id. at 9-10. "Taxpayer status," or establishing eligibility to bring a suit, requires that a complainant demonstrate that the complainant is a taxpayer, and that "the suit is brought, either expressly or implicitly, on behalf of all other taxpayers." Id. at 9 (cleaned up). To satisfy the "special interest" requirement, the complainant must allege both "an action by a municipal corporation or public official that is illegal or *ultra vires*" and "that the action may injuriously affect the taxpayer's property, meaning that it reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes." Id. at 10 (cleaned up). With respect to the latter "specific injury" prong, a complainant "establish[es] specific injury by demonstrating the

appropriate type of harm, a nexus between the illegal or *ultra vires* act and the alleged harm, and some modest showing regarding the degree of harm." Id. (citation omitted).

Although phrased slightly differently, in <u>Joan Floyd, et al. v. Mayor and City Council of Baltimore</u>, ___ Md. ___, ___ A.3d ___, No. 35, Sept. Term, 2018 (Md. 2019), we describe taxpayer standing in a similar manner. In <u>Floyd</u>, Slip Op. at 15, we explain:

> As an initial matter, a complainant must demonstrate that he, she, or it is eligible under the taxpayer standing doctrine; specifically, to establish eligibility to maintain a suit under the taxpayer standing doctrine, a complainant must allege two things: (1) that the complainant is a taxpayer; and (2) that the suit is brought, either expressly or implicitly, on behalf of all other taxpayers.

(Cleaned up). And, we further explain that a complainant must show a special interest in the subject matter of the suit distinct from that of the general public by alleging both an illegal or *ultra vires* action by a municipal corporation or public official and "that the action may result in a pecuniary loss to the taxpayer or an increase in taxes." Id. at 15-16 (cleaned up). As to the "specific injury" prong, in <u>Floyd</u>, <u>id.</u> at 16, we state that a complainant must show "that the action being challenged results in a pecuniary loss or an increase in taxes[,]" and "[t]he harm alleged must be particularized and pecuniary, as opposed to harms to the general public[.]" (Cleaned up). And, significantly, in <u>Floyd</u>, <u>id.</u> at 16, we point out that "there must be a nexus between the showing of potential pecuniary damage and the challenged act." (Cleaned up). Thus, the majority opinion in this case and in <u>Floyd</u> both set forth the same requirements for taxpayer standing.

The circumstances of this case, however, differ from those of <u>Floyd</u> in terms of what is under consideration. In <u>Floyd</u>, <u>id.</u> at 30-31, the taxpayers alleged a theory of pecuniary

loss or increase in taxes that was vague and not easily understandable; and, among other things, they alleged that adoption of the zoning map by *ultra vires* or illegal means would potentially create costs related to defending against challenges to the comprehensive rezoning and zoning map. Under those circumstances, in Floyd, id. at 29-30, we concluded that the taxpayers failed to show a special interest in the subject matter of the case that was distinct from that of the general public because they failed to sufficiently allege pecuniary loss or an increase in taxes. In Floyd, this Court was not confronted with defining "pecuniary loss." By contrast, in this case, Petitioners have alleged taxpayer standing based on preventing waste or unlawful use of public property and funds. See Maj. Slip Op. at 1 n.1, 3-4. What is at issue in this case is whether an allegation of pecuniary loss that is separate from an actual increase in taxes is sufficient to show taxpayer standing and whether the losses that Petitioners alleged—including, among other things, veterinary expenses, and loss of revenue from adoption and licensing fees—constitute such pecuniary losses.

I agree with the Majority that Petitioners sufficiently alleged taxpayer standing, but for different reasons. The Majority holds that Petitioners "have established pecuniary harm derivative of waste and mismanagement, a nexus between that harm and the alleged illegal government act, and sufficiently quantified the alleged harm." Id. at 18. In so holding, the Majority takes great pains to point out that pecuniary loss and an increase in taxes are distinct types of harm. For example, the Majority explains:

> Taxpayers have been consistently required to establish that the action being challenged results in a pecuniary loss or an increase in taxes. We agree with Judge Harrell's dissent in the Court of Special Appeals, as it reinforces

- 3 -

the importance of the disjunctive "or" in the foregoing standard. Yet, in assessing standing, we have never asked for more than a potential showing of such harms, and have exhibited great leniency in our interpretation of potential pecuniary loss[.] Thus, a **reasonable possibility** of either pecuniary loss, **or** a tax increase, must be shown.

Id. at 11 (cleaned up) (emphasis in original). The majority opinion expressly acknowledges that "raising taxes is not the only valid type of harm that can be alleged." Id. at 12. I fully agree with Majority on this point.

In reading the majority opinion, however, it becomes clear that the Majority describes potential pecuniary loss as a circumstance in which there is a potential for an increase in taxes, but where the increase has not actually occurred; *i.e.*, in my view, despite taking care to distinguish between pecuniary loss and an increase in taxes, the Majority appears to, at the end of the day, equate the two. For example, the Majority states:

> Consequently, [Petitioner]s contend, the County has wasted taxpayer funds. They claim that the County's actions "increase the number of animals that must be housed at [Baltimore County Animal Shelter] and therefore impose increased maintenance costs." Such actions allegedly are wasteful in that they impose expenses on the public purse "for materials like medications for animals that avoidably fall ill and euthanizing agents for animals that are unnecessarily euthanized." Finally, [Petitioner]s assert, with fewer animals suitable for adoption, the County lost revenue from adoption and licensing fees. These allegations of waste amount to substantial inefficiency and unlawful misuse of public property and treasure, regardless of whether they are likely to cause an increase in taxes. [Petitioner]s have successfully alleged that because [Baltimore County Animal Shelter]'s ineffectual management resulted in the provision of more expensive shelter services and decreased revenue, its use of taxpayer funds was wasteful.

Id. at 15. Although the Majority indicates that these allegations of waste may result in pecuniary loss regardless of whether they are likely to increase taxes, what the Majority describes as waste are actually expenses or lost revenue that could potentially result in an

increase in taxes. Stated otherwise, these are circumstances that could lead to an increased tax burden, but, in this case, have not yet done so.

Similarly, as to the Dorsey Affidavit,[1] the Majority expressly concludes:

> We doubt[] whether an affidavit stating that taxes will not rise in the future can establish that fact. Moreover, we also question whether any statement about future unsettled Baltimore County tax policy is within the cognition of any lay witness or admissible as evidence in court, as required under Md. Rule 2-501(c). Such a statement is highly speculative.

Maj. Slip Op. at 14 n.5. As I see it, ultimately, the Majority attempts to have it both ways by claiming that potential pecuniary loss and a potential increase in taxes are different types of harm—and I quite agree with the Majority on this point—yet, acknowledging that the waste alleged by Petitioners may result in a potential increase in taxes. The Majority provides no definition of pecuniary loss other than to imply that it may be different than a potential increase in taxes, and proceeds to identify as pecuniary loss circumstances such as "waste" that may result in an increase in taxes. I would simply acknowledge that Petitioners have alleged conditions that could have resulted in an increase in taxes, but did not, and thus have satisfied the special injury necessary for taxpayer standing.

In State Ctr., LLC v. Lexington Charles Ltd. P'ship, 438 Md. 451, 556-57, 92 A.3d

---

[1]The majority opinion describes the Dorsey Affidavit as an affidavit from the Director of Budget and Finance for Baltimore County that

> asserted that Baltimore County property taxes had not been increased in 26 years, the income tax had not been increased in 22 years, and that [Baltimore County Animal Shelter] constituted such a small fraction of the overall budget "that no taxes would be increased as a result of operation of the Animal Shelter."

Maj. Slip Op. at 3.

400, 463 (2014), with respect to taxpayer standing and specific injury, this Court reiterated the well-settled principle that a complainant must allege "a special interest distinct from the general public" by "showing that the action being challenged results in a pecuniary loss or an increase in taxes." (Cleaned up). A "special interest that is distinct from the general public" may be "the increased burden of taxation[,]" *i.e.*, alleging a potential increase in taxes is sufficient. Id. at 557, 92 A.3d at 463 (cleaned up). We emphasized that a complainant "is not required to allege facts which necessarily lead to the conclusion that taxes will be increased; rather[,] the test is whether the taxpayer reasonably may sustain a pecuniary loss or a tax increase—whether there has been a showing of potential pecuniary damage." Id. at 559, 92 A.3d at 464 (cleaned up).

In State Ctr., id. at 583, 92 A.3d at 479, this Court "conclude[d] that [the plaintiff]s pleaded [the] taxpayer standing doctrine sufficiently[.]" We determined that there was a nexus between the plaintiffs' allegations of taxpayer harm and the allegedly illegal acts of public officials. See id. at 577, 92 A.3d at 475. And, we noted that the plaintiffs had alleged that: the project at issue was expected to cost $1.5 billion; a State agency had assumed the obligation to design, finance, construct, operate, and maintain an underground garage for the project, and agreed to contribute up to $28 million in taxpayer funds toward the cost of the garage design and construction; and issuance of $33 million in bonds supported by taxpayer revenues to build the parking garage had been approved. See id. at 577, 92 A.3d at 475. Moreover, the plaintiffs had alleged that they would "uniquely bear the excessive costs" and increased taxes as a result of the State's failure to use a competitive bidding process. Id. at 579, 92 A.2d at 476-77. We determined that these "allegations

[were] sufficient" to establish a nexus. Id. at 580, 92 A.3d at 477. Finally, we stated that, although a plaintiff must make "a clear showing that a monetary burden is alleged[,]" a taxpayer is "not required to prove an exact amount of pecuniary damage that he[,] she[, or it] will suffer." Id. at 580, 92 A.3d at 477. As such, we determined that the plaintiffs had "pleaded sufficiently a loss of revenue from the public funds as contributed by them as taxpayers." Id. at 581, 92 A.3d at 478. Stated otherwise, alleging a potential increase in taxes is sufficient to satisfy the specific injury prong.

Here, although the Majority does not rule out the possibility that pecuniary loss could be different than a potential increase in taxes, the situation in this case is that the Majority describes the pecuniary loss alleged by Petitioners by stating: "We are willing to recognize substantial waste in government operations, even without potential tax increase, as a pecuniary loss sufficient to confer standing. This is because taxpayers, as 'shareholders,' are reasonably entitled to a sound and careful use of funds." Maj. Slip Op. at 13. Clearly, the County's sound and careful use of funds is necessary to avoid a potential increase in taxes. Similarly, the Majority states that Petitioners "allege a nexus between the potential pecuniary damage—waste of government resources within a program funded from a pot that Petitioners are liable to replenish—and the challenged illegal act[.]" Id. at 17. With these observations, the Majority likens pecuniary loss to a potential increase in taxes. The Majority also recounts Petitioners' allegations as including increased maintenance costs, taxpayer expenses for items such as medications, and lost revenue from adoption and licensing fees. These additional costs and lost revenues are circumstances that could theoretically result in an increase in taxes. For these reasons, the Majority is

- 7 -

correct that Petitioners have sufficiently established taxpayer standing. To the extent that the majority opinion expressly states that pecuniary loss and an increase in taxes are distinct harms, and does not rule out that pecuniary loss could be different from a potential increase in taxes—*i.e.*, that pecuniary loss is not limited to a potential increase in taxes—I agree.

Significantly, in this case, in the Court of Special Appeals, in a dissenting opinion, Judge Glenn T. Harrell, Jr., indicated the same—that pecuniary loss and an increase in taxes are distinct types of harm—explaining:

> [T]he Majority opinion in its analysis reduces the disjunctive standard of potential pecuniary loss or tax increase into a single category—it is all about taxation. Although I understand that the name of the legal concept at issue is "taxpayer" standing, that does not mean (or justify) collapsing the alternative basis of "potential pecuniary loss" into the separate category of increased taxation.
>
> The cases, albeit without crystal clarity, distinguish that "potential pecuniary loss" is indeed a separate category for standing from increased taxation. For example, the Court of Appeals, in *James v. Anderson*, 281 Md. 137, 377 A.2d 865 (1977), held that alleging a "decrease in efficiency which would result from the alleged [governmental] ultra vires acts" was "sufficient for a taxpayer of the county involved to maintain a suit." 281 Md. at 142, 377 A.2d at 868. The bar is not set high in meeting this standard. In *Sun Cab Co. v. Cloud*, 162 Md. 419, 159 A. 922 (1932), the Court of Appeals demonstrated great leniency in accepting as sufficient a plea of potential pecuniary loss where a plaintiff claimed an interest in avoiding waste of public funds by local government in conducting an arguably invalid referendum vote. 162 Md. at 426, 159 A. at 925.

Anne George, et al. v. Baltimore Cty., Md., et al., No. 47, Sept. Term, 2016, 2018 WL 2948204, *6 (Md. Ct. Spec. App. June 12, 2018) (Harrell, J., dissenting) (last alteration in original). In analyzing the allegations in this case, Judge Harrell recognized that some of the Petitioners had alleged pecuniary losses distinct from increased taxes, stating:

> [Petitioners] allege that Baltimore County was grossly defective and/or

inefficient in its operation of its Animal Shelter, all of which resulted in the unnecessary or exorbitant expenditure of public funds and even direct personal pecuniary losses to citizens who ended-up having to obtain proper veterinary case (or euthanasia) for adopted animals who had been neglected or mistreated at the Shelter. Mr. Dorsey's (the County's Budget & Finance Director) affidavit, in which the circuit court and the Majority opinion place much stock, made no attempt to counter [Petitioners'] claims of potential or actual pecuniary loss, except as to the unlikelihood of increased or decreased taxes. I conclude that [Petitioners] demonstrated sufficiently a triable controversy.

Id. (footnote omitted). I agree with Judge Harrell's well-reasoned assessment of the case.

In any event, I am in agreement with the Majority's apparent conclusion that alleging circumstances that involve a potential increase in taxes is sufficient to satisfy the specific injury prong of the special interest requirement, and that, here, Petitioners have done so and have otherwise satisfied the requirements to establish taxpayer standing. Whether the harm is described as pecuniary loss or a potential increase in taxes, it is enough under the circumstances of this case.

For the above reasons, respectfully, I concur.