*Paula, et al. v. Mayor and City Council of Baltimore, et al.*, No. 1272, September Term, 2020. Opinion by Ripken, J.

**ACTIONS – GROUNDS AND CONDITIONS PRECEDENT – PERSONS ENTITLED TO SUE**

In order to pursue a civil action, a plaintiff must demonstrate "standing" to bring the suit, meaning that the plaintiff must show that he or she is entitled to invoke the judicial process in a particular instance. When a plaintiff seeks to redress what is claimed to be a public wrong, the plaintiff must demonstrate that he or she has an interest such that he or she is personally and specifically affected in a way different from the public generally.

**STANDING – GENERAL – SPECIAL INTEREST REQUIREMENT**

Complainants were not injured or aggrieved by the actions of the Civilian Review Board ("CRB") in a way that differed in kind and character from the general public, and thus lacked standing to bring an action challenging the CRB's procedures.

**STANDING – TAXPAYER STANDING – IN GENERAL**

To establish taxpayer standing, plaintiffs must demonstrate status as taxpayers, and a special interest. To meet the special interest requirement, a plaintiff must allege (1) an action by a municipal corporation or public official that is illegal or ultra vires; and (2) that the action may injuriously affect the taxpayer's property, meaning that it reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes.

**STANDING – TAXPAYER STANDING – IN GENERAL**

To meet the ultra vires requirement of taxpayer standing, plaintiffs must simply allege, in good faith, an ultra vires or illegal act by the State or one of its officers. As to the second element of the special interest requirement, the specific injury, plaintiffs must demonstrate the appropriate type of harm, a nexus between the illegal or ultra vires act and the alleged harm, and some modest showing regarding the degree of harm.

**CONSTITUTIONAL LAW – DUE PROCESS – SUBJECTS OF RELIEF**

A person who files a complaint against a police officer does not have a life, liberty, or property interest in the CRB's recommendation concerning that complaint, and thus lacks standing.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1272

September Term, 2020

_____

GISELL PAULA, ET AL.

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE, ET AL.

_____

Kehoe,
Berger,
Ripken,

JJ.

_____

Opinion by Ripken, J.

_____

Filed: January 27, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises out of an action regarding the establishment and operation of the Baltimore City Civilian Review Board ("CRB" or "the Board"). Gisell Paula, Megan Kenny, and the Baltimore Action Legal Team (collectively "Appellants") filed a complaint against the Mayor and City Council of Baltimore City, and various related entities (collectively "the City"), including the Baltimore City Police Department ("BPD"), alleging that the CRB was not functioning as an independent agency, but rather under the control of the City. Appellants argued such function was in violation of the Public Local Laws of Baltimore City under which the Board was created as well as in violation of the Maryland Declaration of Rights, and they sought declaratory and injunctive relief. The Circuit Court for Baltimore City dismissed the Complaint, resting its opinion on Appellants' standing to challenge the Board's functioning. Appellants appeal to this Court contending the dismissal was in error. We shall affirm the circuit court's dismissal because there was no justiciable controversy before the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

### Role and Procedure of the CRB

In 1999, The Maryland General Assembly passed legislation creating the CRB. Code of Public Local Laws of Baltimore City ("PLL") §§ 16-41–54 (2016). The purpose of the CRB is to "provide a permanent, statutory agency" to process, investigate, and evaluate "complaints lodged by members of the public regarding abusive language, false arrest, false imprisonment, harassment, or excessive force by police officers of a law enforcement unit" and to review policies of law enforcement units. PLL § 16-42(a). The CRB consists of nine members of the public selected by the Mayor, each representing one

of the nine police districts in Baltimore City, four representatives appointed by interested organizations, and the Police Commissioner. PLL § 16-43(a). At the first meeting of the year, the CRB "shall elect a Chair and Secretary." PLL § 16-43(b). In addition, the Mayor "shall assign staff to the Board for the periodic meetings" from the Office of the City Solicitor and the Community Relations Commission, and the City "may hire an independent administrator to serve the Board." PLL § 16-43(f).

An individual who has been subjected to or a witness of police misconduct "may file a complaint at the Office of the Internal Investigative Division [within BPD], the Legal Aid Bureau, the Maryland Human Relations Commission, the Baltimore Community Relations Commission, or at any of the police district stations." PLL § 16-44(a). Following the filing of a complaint, a copy shall be sent to both the Secretary of the Board, who "shall send a copy to each member of the Board," as well as the Internal Investigative Division. PLL § 16-44(d)–(e). The Internal Investigative Division "shall make a comprehensive investigation of each complaint and submit its Internal Investigative Division Report relating to the incident alleged to the Board[.]" PLL § 16-45. The CRB also permits complaints to be filed directly with the Board. *See Baltimore City Civilian Review Board Bylaws*, BALTIMORE CITY CIVILIAN REVIEW BOARD, 10, https://civilrights.baltimorecity.gov/ civilian-review-board (under "Bylaws," click "CRB BYLAWS Final Draft.docx") (last visited Dec. 12, 2021) (hereinafter "Board Bylaws").

The CRB "shall review all complaints alleging police misconduct" within its jurisdiction and "may investigate, simultaneously with the Internal Investigative Division, each complaint it deems appropriate[.]" PLL § 16-46(a). Following the Internal

2

Investigative Division's report, the CRB "shall review" the report, and "shall recommend to the head of the appropriate law enforcement unit" appropriate disciplinary action, if any. PLL § 16-46(c). The head of the appropriate law enforcement unit must review the recommendation of the CRB, but "has final decision-making responsibility for the appropriate disciplinary action in each case." PLL § 16-48. Currently, and during the time frame raised in this matter, the CRB is organized within the Baltimore City Office of Equity and Civil Rights ("OECR"). According to the CRB's bylaws, "the Mayor has designated the [OECR] to provide administrative support, investigative staff, and meeting space for the CRB." Board Bylaws.[1]

### Current Litigation

In June of 2020, Appellants filed a Complaint in the Circuit Court for Baltimore City against the Mayor and the City Council of Baltimore seeking to "exert their right to an independent civilian review board as the Public Local Laws guarantee." The Complaint asserted Appellant Paula was a resident of Baltimore. It asserted that Appellant Kenny was a resident of Baltimore and "maintains a complaint against [BPD]."

The Complaint alleged that the City undermined the CRB's independence in two ways. First, Appellants asserted the City's decision to organize the CRB within the OECR gave the City undue authority over the CRB as the OECR Director "is accountable to the Mayor." Second, Appellants asserted the Baltimore City Law Department and City Solicitor exceeded their supporting role by taking "controlling actions" over the CRB.

---

[1] According to the City, the OECR "is an umbrella that encompasses three different entities," the CRB, the Community Relations Commission, and the Wage Commission.

3

According to Appellants, the City's control "throttled the CRB's ability" to investigate and review complaints. More specifically, Appellants alleged that, in actuality,

> investigative reports are first passed from [BPD] to the [OECR]. The [OECR] have held these reports from the CRB members until approval to pass them along has been granted from the City Law Department. This assumed discretion and delay has led to reports being held for over twelve months, disqualifying them from procession to any disciplinary action and relevance for CRB review.

Appellants supported their claims with a November 2018 letter from the former City Solicitor to the City Council discussing the "strained relationship" between the Law Department and the CRB.[2] Appellants sought declaratory and injunctive relief based on the Board's alleged violations of Articles 9, 19, and 24 of the Maryland Declaration of Rights. Appellants did not allege that they, at any time, filed a complaint asserting allegations of police misconduct with the Board.

The City filed a motion to dismiss. First, it claimed that the Complaint was devoid of facts to either state a claim or to establish standing to pursue the action. Next, it argued that complainants do not have a right to involvement in the CRB's operations. Finally, it contended the Maryland Declaration of Rights was inapplicable to the allegations in the

---

[2] In 2018 the OECR was known as the City Office of Civil Rights and Wage Enforcement ("OCRWE"). The letter alludes to an incident in which BPD, at the direction of the Law Department, conditioned release of internal investigative records on the then-CRB members' execution of confidentiality agreements. The letter states that the Law Department determined to resolve the dispute and would continue to provide legal advice to the OCRWE and CRB and that OCRWE staff would "receive the withheld internal affairs documents immediately" and were authorized to provide those documents to the CRB, regardless of whether any individual CRB member had signed a confidentiality agreement.

4

Complaint.[3] BPD and the Police Commissioner, represented by separate counsel below, also moved to dismiss

In response, Appellants filed an Opposition to the Motion to Dismiss and a Motion for Summary Judgment. Appellants argued that they had taxpayer standing, general standing, and standing under the Maryland Declaration of Rights. Appellants included new factual allegations in their opposition and attached numerous exhibits.

Three of these new exhibits included affidavits. The first affidavit was from Paula stating she is a Black woman, a Baltimore City resident, owns property in the City, and pays taxes. She further stated that she has witnessed police harassment and racialized targeting by the BPD, and that she desires an independent CRB. The second affidavit from Kenny stated that she is a Baltimore City resident who frequently attends protests to exercise her First Amendment rights, and she has been subjected to police misconduct. On one occasion, she asserted she was at a protest where, after noticing a person on the ground in front of approaching police officers and "moving toward" that person, police began to forcefully "thrust" their shields against her, shove her, and otherwise harass her. She further stated that such police misconduct warrants "the filing of a complaint to the [CRB]," but that she cannot do so because no CRB "that reflect[s] the law exists." The third affidavit was from a former CRB employee, Jillian Aldebron, describing her account of City control over the CRB.

---

[3] In its Motion to Dismiss, the City also argued that a number of the named defendants were not proper parties to the suit or were redundant parties already named.

Another exhibit included a budget report detailing the expenses incurred by the CRB. Other exhibits included a Department of Justice Report describing the presence of racial disparities, use of excessive force, and discrimination prevalent among the BPD; a letter to the Director of the OECR requesting the CRB take certain actions to maintain independence; and additional documents describing the relationship between the CRB and the Office of Professional Responsibility of the BPD.[4]

The circuit court held a hearing on the City's Motion to Dismiss and the Appellants' Motion for Summary Judgment. After each side reiterated the arguments consistent with those made in their respective written motions, the court issued its oral ruling.

The court articulated the relevant standards for both motions to dismiss and motions for summary judgment. It found that standing was a threshold issue that needed to be

---

[4] Appellants' motion in opposition/motion for summary judgment requested the following relief:
   A. Declare that the Defendants have violated the Maryland Declaration of Rights.
   B. Enter an injunction directing that the Office of Equity and Civil Rights and its Director relinquish all authority over the Civilian Review Board, and in moving forward only provide administrative staff.
   C. Enter an injunction directing that the Baltimore City Law Department relinquish all authority over the Civilian Review Board, providing only staff that can act as legal counsel where assistance is requested by the members of the Civilian Review Board.
   D. Enter an injunction directing that the Office of Equity and Civil Rights and its Director provide access and control of all Civilian Review Board records over to the Civilian review Board, in accordance with PLL § 16-52.
   E. Enter an injunction directing that Defendants facilitate the separation, independence, and functioning of the Civilian Review Board, as directed in the Public Local Laws.
   F. Order the Defendants pay the fees and cost of Plaintiffs' counsel in this matter, valued at $250 an hour.
   G. Order the Defendants to pay court costs
   H. Order any additional relief the court deems equitable and proper.

addressed, and a recent opinion from this Court, *Green v. Comm'n on Jud. Disabilities*, 247 Md. App. 591 (2020), was on point. The court found that, applying the reasoning of *Green*, there was no general standing because the filing of a complaint to a disciplinary board tasked with making recommendations "is not [a] sufficient ground to find that [Appellants] were aggrieved or suffered an injury for standing purposes." Any injury alleged, the court found, was based on "[a]n abstract generalized interest" as opposed to a specific and personal injury.

The court similarly noted that *Green* disposed of any due process claims because complainants "do not have a life, liberty, or property interest at stake[.]" Finally, the court found that the requirements for taxpayer standing were not met because "[t]here's nothing to suggest how [Appellants'] property has been affected or how the operation of the Civilian Review Board or its inoperation will result in pecuniary loss for the increased taxes." Because standing to pursue a claim based on the disciplinary process did not exist, the court granted the City's Motion to Dismiss.

Appellants filed a motion to amend or alter the judgment arguing that *Green* was inapposite as it posed a different question than that which they presented to the court. The court denied that motion, and this timely appeal followed.

### ISSUES PRESENTED

Appellants present three issues[5] for our review, which we have reorganized and rephrased as the following:

---

[5] Rephrased from:

I. Did the circuit court err in dismissing the complaint for lack of general standing?

II. Did the circuit court err in dismissing the complaint for lack of taxpayer standing?

III. Does the Maryland Declaration of Rights give Appellants standing?

For the reasons to follow, we answer all three questions in the negative.

## DISCUSSION

**I. WE REVIEW THE CIRCUIT COURT'S RULING AS A MOTION TO DISMISS.**

At the outset, we must determine the procedural posture, and thus the appropriate standard of review on appeal. Initially, the parties seemed to agree that this Court's appellate review is for a ruling on a motion to dismiss. However, in their reply brief, Appellants newly asserted that the Motion to Dismiss had been converted to a motion for summary judgment, and it should be reviewed accordingly. They claim this is so because the trial court considered evidence external to that which was included in the Complaint. In contrast, the City maintains that the trial court based its dismissal of the Complaint only

---

1. Do Appellees' ultra vires acts in controlling the Baltimore Civilian Review Board provide sufficient harm to Appellants to establish tax-payer standing?
2. Do Appellants have general standing where Appellees have disallowed the operation of an independent Civilian Review Board, and thereby denied Appellants' ability to file a complaint with a Civilian Review Board as is provided by statute?
3. Does the Maryland Constitution provide Appellants the right to court action where Appellees have denied them a statutory right to an independent civilian review board?

8

on the facts alleged in the Complaint. Despite Appellants failure to raise this argument in their initial brief, we must first consider the appropriate standard.[6]

This Court characterized the difference between a motion to dismiss and a motion for summary judgment in *Hrehorovich v. Harbor Hospital Center, Inc.*:

> When reviewing the grant of either a motion to dismiss or a motion for summary judgment, an appellate court must determine whether the trial court was legally correct. But this determination depends on the nature of the relief given. The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action. On the other hand, the grant of a motion for summary judgment is proper only if there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.

93 Md. App. 772, 785 (1992) (citations omitted).

Maryland Rule 2-322(c) provides, in pertinent part: "If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2-501[.]" However, if a motion to dismiss is based on questions of law that are collateral to the merits, and "facts are necessary in deciding the motion, the court may consider affidavits or other evidence

---

[6] We note that a party cannot concede or "waive" the proper standard of review. In *State v. Philip Morris, Inc.*, 225 Md. App. 214, 237 (2015) we stated:

> [A]lthough no Maryland court has ruled on this matter, several federal courts have stated that a party cannot "waive" the proper standard of review by failing to argue it. This is because it is the court, not the parties, [who] must determine the standard of review[.] Therefore, [s]uch a determination remains for this court to make for itself.

(alterations in original) (footnote and citations omitted).

adduced during an evidentiary hearing" without converting the motion. *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 11–12 & n.10 (2005).

The City's motion before the circuit court was a motion to dismiss for failure to state a claim and for lack of standing. At the hearing on the various motions, the court first heard argument from the City on its motion to dismiss. The Appellants responded, reiterating their arguments in favor of standing, and reasserting the factual allegations that the City had interfered with the CRB's investigation and review of BPD complaints. The court then heard argument from BPD on its motion to dismiss, which referred to the City's earlier standing arguments. The City responded that even if the court were to reach the facts in the Complaint, it should rule in the City's favor because none of City's specific actions described in Appellant's complaint violated the Public Local Laws.

The court stated that it considered "all of [the] written submissions" as well as "the arguments that [had] been made." It stated that "[w]hether [Appellants] have standing to bring the claims asserted in their complaint is the threshold issue that the Court must first address." The court noted it was granting the motion to dismiss, and based on that, it "need not reach the summary judgment filed by the [Appellants]."

After reviewing the record, we are satisfied that the court decided the matter on the threshold issue of standing. Because standing is a question of law that is collateral to the merits, the court was entitled to consider the uncontested contents of the Appellants' affidavits and opposition without converting the City's motion to one for summary judgment. *See Beyond Systems*, 388 Md. at 12 (reviewing the trial court's holding as a grant of a motion to dismiss because the defense raised questions of law in which the court was

10

permitted to consider additional evidence to decide the motion). *But see Anne Arundel Cnty. v. Bell*, 442 Md. 539, 552 (2015) (reviewing the court's granting of a motion to dismiss based on standing and other grounds as a motion for summary judgment as a result of the trial court considering materials outside the complaint).

Accordingly, the relevant standard of review on appeal is *de novo*. *Green*, 247 Md. App. at 601. "In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Schisler v. State*, 177 Md. App. 731, 742–43 (2007) (internal quotations omitted). "Although it is 'rarely appropriate' to dismiss a declaratory judgment action, dismissal is proper 'when the party seeking such judgment has no standing and there is no justiciable controversy properly before the court.'" *Kendall v. Howard Cnty.*, 431 Md. 590, 602 (2013) (quoting *Roper v. Camuso*, 376 Md. 240, 246–47 n.3 (2003)). We must presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Britton v. Meier*, 148 Md. App. 419, 425 (2002). Mindful of the standard of review, we now turn to the propriety of the court's granting of the Motion to Dismiss.

## II. APPELLANTS LACK STANDING TO PURSUE A CLAIM.

The existence of a justiciable controversy is "an absolute prerequisite to the maintenance of a declaratory judgment action." *Kendall*, 431 Md. at 603 (quoting *Md. State Admin. Bd. of Election Laws v. Talbot Cnty.*, 316 Md. 332, 339 (1988)). Within the larger question of justiciability is the doctrine of standing, which is "designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to present a court with a dispute that is capable of judicial resolution." *Id.* (quoting *Hand v. Mfrs.*

11

*Traders Trust Co.*, 405 Md. 375, 399 (2008)). To maintain standing, a plaintiff must demonstrate both that (1) he or she "has an interest such that he [or she] is personally and specifically affected in a way different from . . . the public generally," and that (2) "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 603–04 (alteration in original) (internal quotations omitted).

With respect to the first prong, a plaintiff must allege "special damage," or that the injury they suffered was "concrete and particularized," as opposed to an injury based on an "abstract, generalized interest" shared by all members of the general public. *Kendall,* 431 Md. at 609, 614–15. Such "special damage" must be "differing in character and kind from that suffered by the general public." *Id.* at 603–04 (quoting *Evans v. State*, 396 Md. 256, 328 (2006)).

Appellants claim that a special interest exists because Kenny, who was subject to police misconduct at a May 2020 protest, "maintains a complaint to file to the [CRB]," and is currently denied the ability to do so. Appellants also argue that the repeated discrimination by the BPD towards African American citizens furthers their specific interest in an independent review board to conduct unbiased investigations of officer misconduct. According to Appellants, Paula's status as an African American citizen and Kenny's status as a frequent activist provides a personal and specific interest distinct from the public.

This Court in *Green* focused on the specific injury element in addressing a complainant's standing to contest a disciplinary commission's actions. 247 Md. App. at

12

603–04. There, an attorney filed a complaint with the Commission on Judicial Disabilities against a judge, and following an investigation, the Commission dismissed the complaint. *Id.* at 597–98. The complainant sought a declaratory judgment that the Commission's procedures violated his due process rights. *Id.* at 598. The circuit court dismissed his complaint based on lack of standing, and he appealed. *Id*. at 601.

On appeal, this Court began its discussion of standing by looking to the personal and special interest requirement. *Id.* at 602. To determine whether a complainant was aggrieved based on the procedure of a disciplinary proceeding, we looked to the purpose behind the Judicial Commission on Disabilities. *Id.* at 603. We noted that it was created "to maintain public confidence in the integrity, independence, and impartiality of judges and the judicial system." *Id.* (quoting Md. Rule 18-401(b)(1)). It was not created to "remedy[] a wrong to a complainant" or for purposes of "vengeance and retribution." *Id.*

We also noted that the complainant did not participate in the proceedings, had no control over the Commission's decision of how or whether to pursue a grievance filed, and was not affected by the outcome of the proceedings. *Id.* at 605. We reasoned that any benefit conveyed from the Commission's disciplinary actions is bestowed on the public, rather than a private individual. *Id*. at 604–05. Furthermore, the only person subject to due process deprivations from the Commission's actions is a judge, "who is potentially subject to discipline or the loss of a job." *Id*. at 605–06. We thus held the complainant lacked standing to challenge "the Commission's resolution of the complaint." *Id.* at 606.

So too here, to determine whether Appellants had an interest "personally and specifically" distinct from the public, we look to the purpose behind the creation of the

13

CRB. PLL § 16-42 states that the Board is established "to provide a permanent, statutory agency," through which "complaints lodged by members of the public regarding abusive language, false arrest, false imprisonment, harassment, or excessive force by police officers of a law enforcement unit shall be processed, investigated [], and evaluated," and "policies of a law enforcement unit may be reviewed." We glean from this provision that the purpose of the CRB is to act as an independent and non-departmental agency to review public complaints concerning police misconduct. *See Wilbon v. Hunsicker*, 172 Md. App. 181, 199 (2006) (holding that the filing of a complaint with the CRB was insufficient to provide the requisite notice of the related tort action because it "is not an agency of the Mayor and City Council of Baltimore City or the [BPD]. It is an independent entity created by the General Assembly to advise the Police Commissioner on matters of police discipline arising from complaints of abusive language, harassment, and use of excessive force."). As in *Green*, these disciplinary proceedings exist not to remedy a wrong done to a complainant, but to maintain the integrity of the agency.

Additionally, like *Green*, a complainant's role in the CRB's investigatory process is limited. PLL § 16-44 states that an individual "may" file a complaint alleging police misconduct, and lists the places where filing is appropriate. Section 16-44 further specifies the content that the complainant must include in the complaint, and it states that a copy of the complaint shall be given to the complainant. The investigation and proceedings of the Board are described in §§ 16-45–46. Neither of those sections mentions the complainant or alludes to any role of the complainant. Much like in *Green*, a complainant is not a party to the disciplinary proceeding and has no control over the procedure following the

14

submission of the complaint. In fact, though Appellants argue that complainants have a right to the CRB's independent investigation, PLL § 16-46 makes clear that the Internal Investigation Division is tasked with investigating the complaint, and the Board *may* choose to simultaneously investigate, but it need not do so. Aside from filing the initial complaint and possibly being called as a witness in the investigation process, a complainant is otherwise uninvolved in the process.

Finally, much like *Green*, any benefit conferred by the disciplinary proceeding is bestowed on the public, in the form of a disciplinary action taken against the officer, as opposed to on a private individual, such as through monetary compensation. Similarly, any risk of injury is suffered either by the public, in the event of an officer not receiving discipline, or by the officer, in the event he is disciplined.

Appellants contend that *Green* is distinguishable because it "posed a different question" than that which they posed to the circuit court. According to Appellants, the court should not have relied on *Green* because, while factually similar, the complainant there had the right to bring a grievance claim to a disciplinary commission and in fact did so, and he was challenging the Commission's decision to dismiss the complaint. Here, Appellants maintain that because they were deprived of the right to file a complaint with the CRB,[7] and because the complainant in *Green* "was not denied his right to file an initial

---

[7] We note that the Public Laws do not specifically require that the CRB accept complaints; rather the Public Laws require that the CRB must be allowed to review complaints submitted to the Office of the Internal Investigative Division, the Legal Aid Bureau, the Maryland Human Relations Commission, or any of the police districts. PLL §§ 16-44, 46.

complaint," the cases are distinguishable. Appellants posit that *Green* would be analogous to this case if the Commission refused to accept Green's complaint.

We disagree. *Green* dealt with whether a complainant had standing to challenge the procedure of a disciplinary commission. 247 Md. App. at 597. Here, the question before the circuit court was whether Appellants had standing to challenge the current procedure and practices of the CRB. Although the portion of the procedure at issue in *Green* was the Commission's dismissal of a complaint and here Appellants take issue with the staffing and records keeping procedures, the core of each case is a complainant challenging a disciplinary agency's internal workings. And, though Appellants claim they are denied their right to file a complaint, nowhere does the record reveal that they in fact filed a complaint, were discouraged from filing a complaint, or were otherwise hindered. Rather, they chose not to file a grievance because they indicate they believe there are problems with the procedure and practices of the CRB. Their decision not to file a complaint does not equate to a denial of the right to do so, and thus does not provide a basis by which to distinguish *Green*.

We also note that the CRB's findings are recommendations. The Commissioner is required to consider those findings, but the Commissioner alone makes the final decision as to what disciplinary action, if any, to take. We fail to see how such recommendations can cause injury consistent with that which is required for standing. "[M]erely a claim of 'the right, possessed by every citizen, to require that the Government be administered according to law,' is not sufficient to confer standing." *Kendall*, 431 Md. at 609 (quoting *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009)). We hold that the interests asserted

16

do not amount to specific and personal injuries distinct from the general public.

### III. THE CIRCUIT COURT DID NOT ERR IN FINDING THE REQUIREMENTS FOR TAXPAYER STANDING WERE NOT MET.

Appellants next contend that the taxpayer standing doctrine provides an alternate basis for standing. "The common law taxpayer standing doctrine permits taxpayers to seek the aid of courts, exercising equity powers, to enjoin illegal and *ultra vires* acts of public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayer." *State Center, LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 538 (2014). The Court of Appeals addressed the taxpayer standing doctrine at length in *State Center*. In considering the doctrine, the Court separated each of the distinct requirements to establish such standing. *Id.* at 540–41. The Court of Appeals further explained the requirements in *George v. Baltimore County*, 463 Md. 263 (2019).

In order to have taxpayer standing, the complainant must demonstrate two requirements. *George*, 463 Md. at 275. The first requirement is status, meaning the complainant must show he is a taxpayer and "the suit is brought, either expressly or implicitly, on behalf of all other taxpayers." *Id.* The second, similar to that for general standing, requires that the complainant assert a "special interest" distinct from the general public. *Id.* However, for taxpayer standing, the special interest requirement is divided into two additional elements: the complainant must allege that an action by the government is illegal or *ultra vires*, and that such an action satisfies the "specific injury prong," such that it may "injuriously affect the taxpayer's property, meaning that it reasonably may result in pecuniary loss to the taxpayer or an increase in taxes." *Id.* at 275–76 (quoting *Kendall*, 431

17

Md. at 605).

The Court of Appeals recognized that the first element, action that is illegal or *ultra vires*, "has been applied leniently and seems rather easy to meet." *Id.* at 276 (quoting *State Center*, 438 Md. at 556). As long as the claimant makes the allegations in good faith, the allegations will be sufficient to confer taxpayer standing. *Id.* On the other hand, the specific injury element is the foundation of the taxpayer standing doctrine and "often proves a stumbling block." *Id.* (internal quotations omitted). Claimants can meet this element by demonstrating that they suffered the appropriate type of harm, that there is a nexus between the illegal or *ultra vires* act and the alleged harm incurred, and that there is some measure of the degree of harm. *Id.*

With respect to the type of harm alleged, the claimant must show that the action challenged results in pecuniary loss or increase of taxes. *Id.* at 277. The test is whether a claimant "reasonably may sustain a pecuniary loss or a tax increase." *Id.* at 277 (quoting *Inlet Assocs. v. Assateague House Condo. Ass'n*, 313 Md. 413, 441 (1988)). Pecuniary loss may be shown through waste of taxpayer funds, but claimants must still establish a nexus between such wasted funds and the challenged act. *Id.* at 281–82. That nexus "must be alleged sufficiently." *State Center*, 438 Md. at 572. This connection must be such that the remedy sought, if granted, would alleviate all similarly situated taxpayers' burden. *Bell*, 442 Md. at 579 (quoting *State Center*, 438 Md. at 572–73). To determine if the type of harm alleged is one that may affect taxes, the proper focus is on the claims at issue. *State Center*, 438 Md. at 565.

Turning back to the instant case, we conclude, as the circuit court did, that

18

Appellants fail to satisfy the requirements for taxpayer standing. We first apply the two requirements of the doctrine—taxpayer status and special interest. As to taxpayer status, Appellant Paula asserts, in her affidavit attached to Appellants' opposition to the motion to dismiss, that she owns residential property in Baltimore and pays taxes. Because, on review, we assume the truth of the well-pled facts and all reasonable inferences drawn therefrom, we hold that Appellants' complaint satisfied the first prong of the taxpayer standing doctrine.

Appellants' allegations fall short of demonstrating the second requirement for taxpayer standing, a special interest. First, Appellants describe the City's *ultra vires* actions as exertions of control over the CRB, which removed the statutorily mandated independence from the agency. They allege that the CRB's organization within the OECR allows the OECR to act as a "gatekeeper" for complaint intake, investigations, and interface with other agencies and the public. Among other things, Appellants allege that the OECR failed to timely forward complaints to the CRB secretary; failed to timely present documents and information requested by the CRB; did not consult the CRB before preparing budget requests; and failed to comply with protocols established in the Consent Decree. They further allege that the Law Department also exerts pressure on the CRB and BPD which have resulted in delays in the transfer of complaints to the CRB—although the specific example they cite is resolved, they suggest that the improper "power dynamic" between the Law Department and CRB is ongoing. We assume that these allegations were made in good faith.

19

Second, though Appellants claim that they suffered pecuniary harm, their complaint and opposition to the motion to dismiss did not adequately allege waste of public funds and failed to demonstrate a nexus between alleged *ultra vires* acts and pecuniary harm. Appellants allege a general harm in that the City's actions "violated [Appellants'] right to the protection of a civilian review board as defined and established in the Public Local Laws" and Maryland Declaration of Rights Articles 9, 19, and 24. Appellants later claim that pecuniary harm resulted from waste in the CRB's budget of $675,121, which was expended "without proper authorization." In their opposition motion, Appellants explained that amount was allocated for "five OECR staff salaries" and other expenses. They also allege that pecuniary harm resulted from the creation of "additional positions that control and oversee the CRB," which distracts employees from other responsibilities. Such actions, according to Appellants, "divert taxpayer dollars."

These vaguely described pecuniary harms do not suffice for taxpayer standing. The City plainly is authorized to expend funds on the CRB and its staff.[8] Complainants asserting taxpayer standing must identify specific actions of the municipal government resulting in pecuniary harms that would be remedied by their suit. *See George*, 463 Md. at 280 ("Taxpayers have successfully alleged that, because [Baltimore County Animal Shelter's] ineffectual management resulted in the provision of more expensive shelter services and decreased revenue, its use of taxpayer funds was wasteful."). Appellants fail to connect to

---

[8] The Public Local Laws state "[t]he Mayor of Baltimore City shall assign staff to the Board for the periodic meetings of the Board from the Office of the City Solicitor and the Community Relations Commission," and "Baltimore City may hire an independent administrator to serve the Board." PLL § 16-43.

20

the CRB's alleged lack of independence to expenditure or inefficiencies that would cease if its relief were granted. The portion of the CRB budget Appellants identify purportedly relates to the salaries of five staff members, but Appellants do not explain how the staffs' duties or expenses would change if Appellants' relief were granted.[9] It is not clear that the relief sought—enjoining the City from exercising authority over the CRB and directing it to provide administrative staff and support and to allow the CRB "access and control" over CRB records—would alleviate any pecuniary loss cited by the Appellants. We fail to see the required nexus to demonstrate taxpayer standing.

## IV. THE MARYLAND DECLARATION OF RIGHTS DOES NOT CONFER STANDING.

Last, Appellants ground a claim for standing in the Maryland Declaration of Rights, arguing that they have standing to assert constitutional violations. A party "has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *Brown v. State*, 171 Md. App. 489, 518 (2006) (quoting *County Court of Ulster Cnty. v. Allen*, 442 U.S. 140, 154–55 (1979)). Appellants specifically cite Article 9, Article 19, and Article 24 as bases for standing. We address each in turn.

### A. Article 9 Does Not Provide Standing.

Appellants first cite Article 9 as their basis for standing. Article 9 states "[t]hat no power of suspending Laws or the execution of Laws, unless by, or derived from the Legislature, ought to be exercised, or allowed." MD. CONST. Decl. of Rts. art. 9. Appellants

---

[9] We also note that the portion of the record Appellants cite to details an increase in the CRB's budget from 2019 to 2020, which the budget explains was for "data processing services" to "provide the Office of Civil Rights with funding for transcription services." Appellants do not address this increase in their brief.

21

argue that the operation of the CRB is not independent and thus in violation of PLL § 16-42. Such violation, according to Appellants, is the equivalent to suspension of § 16-42.

We disagree. To the extent that Article 9 confers standing, it is to challenge purported suspensions or executions of laws by some entity distinct from the Legislature. *See Doctors' Hosp. of Prince George's Cnty. v. Maryland Health Resources Planning Com'n*, 65 Md. App. 656, 675–76 (1986) (holding that the Commission's decision to await receipt of additional information before granting an application did not constitute a suspension of laws, and it was not in violation of Article 9). Here, Appellants do not allege that the CRB suspended or enforced a law; rather, they claim the CRB is in violation of the laws under which it was created. Non-compliance with a law is not the type of violation to which Article 9 is concerned. Thus, we decline to extend standing under Article 9.

## B.     Article 19 Does Not Provide Standing.

Appellants next argue that Article 19 provides a basis for standing to pursue their claim. Article 19 states:

> That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

MD. CONST. Decl. of Rts. art. 19. This constitutional provision protects "two interrelated rights: (1) a right to a remedy for an injury to one's person or property; (2) a right of access to the courts." *Piselli v. 75th Street Medical*, 371 Md. 188, 205 (2002). "Where a person clearly has a right to money or property under a statute or common law principle, and no statute specifically provides for a remedy, Article 19 guarantees a common law remedy to

22

enforce the right." *Id.* at 206

This provision is inapplicable for two reasons. First, as we have explained, we see no injury capable of redressability by a court. Appellants have not been denied the right to file a complaint with the CRB as they have not alleged that they ever attempted to file a complaint, nor are their rights affected by the procedure in which the CRB operates. Second, Appellants are not seeking "money or property," but are pursuing declaratory and injunctive relief. Such relief is not a remedy within the purview of Article 19.

To the extent that Appellants have been subjected to police misconduct or have otherwise suffered an injury in their persons or property, Article 19 entitles them to seek a remedy in a court of law, for example, by pursuing a tort action.[10] However, the CRB is not the appropriate venue to seek such a remedy. As we have stated, it is not created to redress wrongs. The purpose is two-fold: to investigate citizens' complaints about police misconduct, and to review police policies. An allegation that the CRB's independence, or lack thereof, causes injury is not in violation of Article 19.

### C.    Article 24 Does Not Provide Standing.

Finally, Article 24 does not provide a basis to confer standing. Article 24 states: "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of its peers, or by the Law of the land." MD. CONST. Decl. of Rts. art. 24. Article 24 is the complementary provision to the Due Process Clause

---

[10] We pass no judgment about whether a tort claim exists in this instance.

23

of the Fourteenth Amendment as both provisions provide protection against government deprivation of life, liberty, or property. *Roberts v. Total Health Care, Inc.*, 109 Md. App. 635, 643 (1996).

This Court rejected an identical constitutional standing argument in *Green*. 247 Md. App. at 605–06. There, the complainant asserted that he had constitutional standing under the Due Process Clause of the Fourteenth Amendment based on the deprivation of his rights. *Id.* at 605. We held: "[t]he only person who is subject to such deprivation by proceedings with the Commission is a judge, who is potentially subject to discipline or the loss of a job." *Id.* at 606. An accused judge is entitled to the protections under the Due Process Clause. *Id.* However, a "person who files a complaint against a judge [] does not have a life, liberty, or property interest at stake when the Commission decides whether to pursue judicial discipline. Thus, a person filing a complaint with the Commission has no due process rights." *Id.*

We perceive no basis for which *Green* can be distinguished on this issue. Appellants are not subject to any deprivation of rights based on the CRB's investigation and recommendation. Any recommendation of discipline, which may or may not be accepted by the Commissioner, affects only the accused officer. The accused officer then is the person entitled to procedural due process. Appellants, as in *Green*, do not have a life, liberty, or property interest at stake when the CRB processes a complaint, and thus do not have procedural due process rights or standing under Article 24. Accordingly, declaratory and injunctive relief is not available as Appellants lack the requisite standing to contest the procedure of the CRB.

24

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**